1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11

12

RICHARD C. SPRUEL JR.,

13

Plaintiff,

14

v.

Case No. C06-5021RJB

15

HAROLD CLARKE *et al*.,

REPORT AND
RECOMMENDATION

16

Defendants.

17

**NOTED FOR:**
**May 18, 2007**

18

19      This action, brought pursuant to 42 U.S.C. 2000, has been referred to the undersigned

20   Magistrate Judge pursuant to Title 28 U.S.C. § 636(b)(1)(B). Before the court is defendant's motion

21   for Summary Judgment (Dkt. # 56).  Plaintiff has responded (Dkt. # 61).  Defendant has replied

22   (Dkt. # 60). Previously in this litigation plaintiff sought injunctive relief.  His motion was denied

23   (Dkt. # 32).  Plaintiff does not seek monetary damages and the remaining issue is whether he is

24   entitled to a permanent injunction ordering the Washington State Department of Correction provide

25   him with a Halal Diet that includes Halal Meat (Dkt. # 5(compliant)).

26   /

27   /

28   REPORT AND RECOMMENDATION - 1

1

FACTS

2        Plaintiff alleges he is Shi'a Muslim.  (Dkt. # 5).  Defendants do not question the sincerity of

3   plaintiff's alleged religious beliefs.  (Dkt. # 12).  The court accepts plaintiff's contention that he

4   belongs to this sect of the Muslim religion.

5        Plaintiff alleges his religion mandates he eat a Halal diet.  (Dkt. # 5).  Plaintiff originally

6   alleged his beliefs only mandated that when meat is eaten, the meat must be slaughtered in a

7   prescribed manner for it to be considered Halal.  (Dkt. # 5, 24).  The department's response to

8   plaintiff's request for Halal meals has been to place plaintiff on a meat free "ovo-lacto" diet.  (Dkt. #

9   12).  The department contends this diet meets the religious requirements of plaintiff's religion and is

10  nutritionally balanced.  (Dkt. # 12).  There is precedent for defendants contention.  Williams v.

11  Morton, 343 F.3d 212, 218 (3rd Cir. 2003).

12       In response to defendants motion for summary judgment, plaintiff has clarified that under his

13  interpretation of Islamic law, Shi'a Muslims cannot eat or drink anything that has been touched or

14  handled by a non-Muslim (Dkt. # 61, page 2).  Further, there are restrictions on how meat and any

15  other item must be slaughtered or handled.  The support for plaintiff's contentions originally came

16  from his affidavit and the affidavit of a student, Marlon Bush.  (Dkt. # 24 and 25).  Neither affidavit

17  provided any evidentiary foundation for the conclusory statements in the affidavits.  Lujan v. National

18  Wildlife Federation, 497 U.S. 871, 888-89 (1990).

19       In response to defendants motion for summary judgment, plaintiff has now placed before the

20  court portions of a book titled "Islamic Laws English Version of Aytullah al Uzama Syed Ali al-

21  Husanini Seestani." (Dkt. # 61, Exhibit 1 Attachment).  Page 450 footnote 651 states:

22       The Muslim Jurists have discussed about the verse in many necessary details which
         deserve consideration by the adherents of the faith- Refer to 'Fiqha.'

23

24            As for the food declared unlawful by Islam, can never become if offered by
         any follower of the scriptures viz, the Jews or the Christians.  Even about things
         definitely declared as lawful, for instance the flesh of a fowl will not reasonably be
25       lawful if offered by Christians for when they slaughter a bird they usually strangle or
         kill it in their own ways prohibited by Islam.  Besides they do not at all invoke the
26       name of God upon it.....

27            A thing in a certain condition lawful can be unlawful in another way viz, wine

28  REPORT AND RECOMMENDATION - 2

1
2
3
4
turned into vinegar becomes lawful, but if the wine was originally made or even touched by a polytheist it remains unclean, even if subsequently converted into vinegar. **Besides the Trinitarian Christians do not scruple about things held unclean in Islam.  Hence even lawful things cooked by Christians cannot reliably be lawful for the Muslims, for Christian ways of cleaning or purification, is quite different from Islamic ways.  Thus the food prepared by Jews of Christians can not be lawful for the Muslims**.

5    (Dkt. # 61, exhibit 1, attachment B page 450 note 651).

6    Plaintiff contends the diet provided by DOC does not provide meat and is therefore in

7    violation of his faith (Dkt. # 5). Plaintiff contends he may only eat or drink of items prepared by

8    Muslims.  Finally, plaintiff contends the "ovo-lacto" diet is shared by other religious groups and

9    eating this diet somehow violates his beliefs.  (Dkt. # 24, page 3).  Plaintiff provides no support, legal

10    or secular, for this final argument.

11                                                    STANDARD

12    Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings,

13    depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that

14    there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of

15    law." Fed. R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the

16    nonmoving party fails to make a sufficient showing on an essential element of a claim on which the

17    nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

18    There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

19    rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

20    475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not

21    simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute

22    over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring

23    a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S.

24    242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626,

25    630 (9th Cir. 1987).

26    The determination of the existence of a material fact is often a close question.  The court must

27    consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the

28    REPORT AND RECOMMENDATION - 3

1   preponderance of the evidence in most civil cases.  Anderson, 477 U.S. at 254; T.W. Elec. Service Inc.,

2   809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving

3   party only when the facts specifically attested by the party contradicts facts specifically attested by the

4   moving party. Id.

5       The nonmoving party may not merely state that it will discredit the moving party's evidence at

6   trial, in hopes that evidence can be developed at trial to support the claim.  T.W. Elec. Service Inc., 809

7   F.2d at 630.(relying on Anderson, supra).  Conclusory, nonspecific statements in affidavits are not

8   sufficient, and "missing facts" will not be "presumed."  Lujan v. National Wildlife Federation, 497 U.S.

9   871, 888-89 (1990).

10                                      DISCUSSION

11      This action has been brought under the Religious Land Use and Institutionalized Persons Act,

12  RLUIPA.  In enacting RLUIPA congress has replaced the rational relationship test with the least

13  restrictive alternative test for issues relating to religion.  Warsoldier v. Woodford, 418 F.3d 989, 994

14  (9th Cir. 2005);

15      The Supreme Court has considered RULIPA and held the act does not eliminate the

16  deference given to prison administrators who are charged with running state institutions.  Cutter v.

17  Wilkinson, 544 U.S. 709 (2005).  Both the Supreme Court and Congress have indicated RLUIPA

18  must be applied as follows:

19          [W]ith "due deference to the experience and expertise of prison and jail administrators
            in establishing necessary regulations and procedures to maintain good order, security
20          and discipline, consistent with consideration of costs and limited resources."

21  Cutter, 544 U.S. at 723 (quoting Joint Statement S7775 (quoting S. Rep. No. 103-11, p. 10 (1993),

22  U.S. Code Cong. & Admin. News 1993, pp. 1892, 1899, 1900)).

23      The Department of Corrections has a compelling interest in reducing its costs, streamlining its

24  food production, limiting the number of required staff, maintaining consolidation of its vendors, and

25  preventing security risks as outlined in defendants motion for summary judgment (Dkt. # 56).  The

26  department notes that when food services were simplified in 2002, from fourteen separate diets to six

27  diets, the DOC eliminated fourteen full time employees due to the simplification of food

28  REPORT AND RECOMMENDATION - 4

1  preparations.

2      1.    <u>Eating of meat</u>.

3      Contrary to plaintiff's contention, he has no admissible evidence showing his religious beliefs

4  mandate he eat meat.  He has, however, provided passages from his holy scripture indicating he

5  should not forbid himself from eating meat if it is Halal.  (Dkt. # 24, page 3 and attached

6  declarations).  Plaintiff's contention that the DOC must provide him with Halal meat is simply not

7  supported by the record.

8      Plaintiff has failed to show that the ovo-lacto vegetarian meals do not **adequately**

9  accommodate Plaintiff's religious dietary requirements at the lowest cost to the DOC.

10     2.    <u>The handling of food in general</u>.

11     In his statement of facts in opposition to summary judgment Plaintiff alleges he is a Shi'a

12 Muslim.  He alleges the tenants of his faith preclude him from consuming any food or drink not

13 properly blessed and properly handled (Dkt. # 61, page 2).  He goes on to state he cannot eat any

14 food currently being served at the prison "because such food is touched, handled, and prepared by

15 non-Muslims who are considered unclean by Shi'a Islamic law." (Dkt. # 61, page 2).

16     Thus, it is not just the diet, or manner in which the food is slaughtered plaintiff finds

17 offensive.  Applying his version the tenets of the Muslim faith would mean The Department of

18 Corrections would need hire all Muslim staff to handle and prepare food if a Shi'a Muslim were

19 eating the food.  Plaintiff seeks to impose restrictions on the Department of Corrections that are

20 simply not warranted or mandated under RLUIPA.

21     By providing ovo-lacto vegetarian meals, the DOC is able to meet Muslim religious

22 requirements and not incur the burdens of a complicated food service, demands for additional

23 staffing, potential increased security threats and increased costs.  Plaintiff's position is untenable.

24     3.    <u>The shared religion argument</u>

25     Plaintiff has provided no evidence for his contention that he cannot eat an ovo-lacto diet

26 because the diet is shared by other religious groups such as Buddhists.  This unsupported argument

27 should not be considered. Defendant motion for summary judgment should be **GRANTED.**  A

28 REPORT AND RECOMMENDATION - 5

1    proposed order accompanies this Report and Recommendation.

2           Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the

3    parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed.

4    R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of

5    appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule

6    72(b), the clerk is directed to set the matter for consideration on **May 18, 2007.**

7           DATED this 27 day of April 2007.

8

9                                            /S/ *J. Kelley Arnold*
                                             J. Kelley Arnold
10                                           United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   REPORT AND RECOMMENDATION - 6